Good morning. May it please the Court. My name is Tim Truitt. I'm the plaintiff, Mr. VACEK's lawyer, and I have been since day one. I am the attorney whose declaration was termed sparse and weak by the District Court, and I'm basically here to ask for a hearing on the merits of that declaration. I presume you're now using certified mail. No. I am now using FedEx exclusively. Your Honors, in going over the court's transcript to prepare for today and in looking at the District Court's records, I want to make a factual observation that I think underpins each of the three arguments I attempted to present quickly and concisely in the brief. And that is, between the date of the accident that started this case off, which was March 9, 1999, and the spring of 2002, which was when the District Court issued its order to show cause to the government to show why it should not be held in default, there were 23 communications with Trudell Griffin, not one of which was replied to. Now, this is an individual who, for some reason, great difference, was given by the District Court in weighing his sworn testimony that he did not receive my one letter. In the period that the administrative claim was open, between March 9, 1999, and March 9, 2001, there are, in this Court's records, 10 communications to Trudell Griffin, not one of which he admitted having received, not one of which is replied to. Now, after the claims period closed, and in your record, you have one, two, three, four, you have six communications from me to Trudell Griffin, not one of which was replied to. The lawsuit itself, and this is not in your record, but it's certainly in the District Court record, was served four times without an appearance until an order to show cause was issued. If there is a lesson beyond using FedEx, Your Honors, it's that the Postal Department, if it wishes, can simply say, I didn't get it. That's all they have to do. Be it certified mail or anything else, all they have to do is deny receipt. The simplicity of their position, I hope, is underscored by the simplicity of mine. If I hand a letter to the postman, I have delivered it, and I have witnessed its receipt. That's the simplicity of my fundamental argument. It might not work with the FAA. It might not work with Justice. But if I had taken the same claim and handed it to the administrator of the FAA, I think my declaration that I delivered it and my observation that he accepted it from my hand is just as binding. Well, the government seems to take issue with whether, I mean, they don't say it directly. They say your affidavit isn't sufficiently detailed as to the method of delivery. And I looked at that, and I think your affidavit just says you mailed it. I did, yes. And so what you are saying to us is that if you're under oath, you're going to say, I recollect giving the letter to the mailman. What are you going to say? I mean, no, you're an officer of the court. I'm an officer of the court. I can tell you, because of circumstances we don't need to go into, that I specifically recall placing this very envelope in a mailbox, in a post office mailbox, marked stamped mail only, at the corner of Bush and Montgomery Street at 330 in the afternoon. And I didn't go into that in here, but what I did show was the computer metascript or metadata, as they call it. I read all that. And there have been some similar cases. The government in that case was the IRS contested affidavits based on insufficient recollection of the method of delivery. When you said mailed, I didn't know whether this kind of case or not. What you're representing to us is that if you're entitled, if you get a chance to put evidence on, you can prove at least you're offering evidence of a specific recollection and not just a course of conduct. Not a course of conduct, Your Honor, a specific recollection. And I tried to. I believe I said that adequately. I said I mailed it on the same day as I prepared it. Yes, well, that's what I want to explore. I didn't go into further detail. I point out the number of instances of communications with Mr. Griffin and point out to you that it's contained within my letters as well as the actual claim form 95s from Royal Golden Eagle Insurance are contained within the transcript that you have. I believe this shows more than a presumption of mere negligence that the district court seemed to find. I think it shows an attitude of contempt. It shows a conscious disregard of repeated submissions of a claim on what ought to be a fairly straightforward matter. So beyond what I've put in here, I would like to add the first hearing that you had this morning had to do with deferring to a treating physician because of his relationship with the injured person. I think, and I've pointed out that I think a same or similar deference ought to be made to officers of the court when they make a declaration under oath. We're putting our license on the line, and we're saying that a specific incident occurred. And I don't know that that should necessarily trump a postman, but I think it should be taken more seriously than the district court did in this instance. And I appreciate your time, and I appreciate your welcome this morning. Can I have a question? Yes, sir. We advised counsel of cases that we'd like to have them prepared to respond to, and you received that order. No, sir, I did not. I will point out, I noticed in the district court's log yesterday, I noticed that there was a letter returned to the district court addressed to me marked, address the unknown. Okay. I don't have, but I did not receive anything about a specific question. I don't know what happened to that, but let me, there's a case that we have, United States, which we wanted to have you discuss. This was a Federal Tort Claims Act case in which the attorney indicated that, like yours, that Form 95 had been sent. The post office employees signed declarations that they didn't receive it, and we held there was no jurisdiction. And the case seemed so close to the case that we have before us now, we wanted to give you an opportunity to see if there's any way of distinguishing the case. I remember, is that a case with a local attorney that dealt with a claim to the FAA? Do you know, Mr. Simons? Yes. Against the Air Force. Against the Air Force. My the issue, if I recall the Bailey case, Your Honor, that was a case where an attorney mailed it. There are two cases that are very similar. One was a case where it was actually placed in the mail the day before the two-year period ran. And I remember the Court deciding whether 48 hours was enough for it to get from the mailbox off to the Secretary of the Air Force or the FAA. There was another one where the issue had to do with the subsection of the Claims Act that said that if a claim is delivered to the wrong agency, that that agency shall transmit it to the appropriate agency forthwith. My memory tells me that's Bailey. This is the Air Force case. My memory tells me, Your Honor, that that case had to do with time. And I apologize. Let's take a look at it. Thank you. It goes into a specific holding. You'll have to ignore that. You can. Yeah. Maybe you could read that during the time of 48 hours. I think he's offering to sit down now and do that. I will. Thank you very kindly. I don't want to hear from the government at this time. I take it you got the order. Yes, I did, Your Honor. Okay. And you're prepared to talk about Bailey. I am. Okay. May it please this Court, my name is Abraham Simmons. I was the first United States, assistant United States attorney to handle this case. I have been with this case since it began in the district court. I would like first and foremost to apologize to the courts, to the judges of this court. That is the Bailey case. The case that was cited in this court's February 6th order is controlling relevant authority, and I failed to find it, and I just didn't cite it. And I think it is absolutely controlling. There's no difference. In fact, if you look at the facts in the Bailey case, it is a step more sympathetic to the plaintiff. It was a wrongful death case in Bailey, and there was a lot of communication between the agency and the plaintiff in that case. And yet the administrative tort claim was one that just simply was not received, though it was mailed by the plaintiff, and the agency submitted a declaration saying we just have never received it. And that was sufficient to demonstrate that there was not that — there was no jurisdiction in that case. Did Bailey involve anything like this case where there's at least the allegation or claim that there was a long series of communications between a representative of the agency and the attorney for the injured party? Yes, Your Honor. If you look at the dissenting opinion in Bailey, it goes through in the footnotes there about some of the communications that were gone through. And the dissent points out this is a case in which there was at least one letter that was clearly received by the agency that said, in this case, this letter should complete the file for all three plaintiffs related in all of our litigation. And yet that was not sufficient. Even though the agency admitted — acknowledged receiving that letter, it was not sufficient for the plaintiff to overcome the burden to demonstrate that the SF-95, the one communication with the some certain jurisdiction and putting the agency on notice was sufficient for jurisdiction. Did Bailey involve — did the agency involved in Bailey put in evidence of a specific and detailed search? It — I do not believe so, Your Honor, although I am not positive on that point. My understanding is that there was no — there was an affidavit submitted that — let me see — an affidavit submitted that there was — that it had not been received. And nothing else? I'm asking because I don't know. I believe that that's — I believe that that's all. But I could take a look to confirm that. What Bailey also did, I think, was to assume without deciding that the mailbox rule applied to Federal Tort Claims Act cases. Do you think the mailbox rule should apply? No, Your Honor. In this case, the plaintiff has so many tools available to document — No, I'm sorry. Maybe I — maybe I mis — maybe you misunderstood my question. I'm talking about as a matter of law, should the mailbox rule apply to Federal Tort Claims Act cases? By the mailbox rule, I — That creates a rebuttable presumption. That's not a rebuttal. In the absence of an affidavit demonstrating nonreceipt, Your Honor, perhaps so. But once there is an affidavit by the person to whom the letter was actually addressed, in this case Trudell Griffin, demonstrating nonreceipt, then, no, that rebuttable presumption, under Bailey at least, must go away. What's wrong with having an evidentiary hearing on this in the district court? That's — that's what I think is one of the things that troubles me, is that it's simply a battle of affidavits. We don't know. There are no fact — there's no fact-finding on this issue. Normally, it would be a clear case where we would require an evidentiary hearing. Why shouldn't we require one? We're dealing here, Your Honor, with a 12B1 motion. Affidavits should be sufficient, and in certain cases, perhaps they would not be. But here, there's nothing to suggest that there's going to be additional evidence that's going to be developed. There's nothing that's going to get Trudell Griffin to say, yes, I did receive the — the affidavit. Here, we have an attorney who said, I put it in a mailbox, and we have the person to whom it was addressed saying, I didn't  But normally, at 12B, there are just no disputed facts. Well, 12B1 and 12B6, we have to be careful to look at the difference between them. In 12B1, you're looking at the facts, and this Court should reverse it only if it finds that there is a — a clearly erroneous resolution of the facts by the district court. Here, the district court looked very carefully at the Trudell Griffin declaration and very carefully at counsel's declaration and went through line by line. You should find only if that — that analysis was clearly erroneous that the district court made a mistake. But — Why is it clearly — why is it clearly erroneous? Because there are facts that are being found here, Your Honor. Under 12B1, and I think actually one of the cases, the Eleventh Circuit case that this Court cited, actually points out the difference between the two, and it's actually an interesting place to look to — to see how the interplay may actually be resolved. But in this case — But you're getting back to my question, which is on a 12B1, a district court can make factual findings on the basis of an evidentiary hearing, and I probably didn't articulate that well to begin with, and when I said that we would usually require that. Here you have competing affidavits where, if you take both as true, they may or may not be able to reconcile. If the fact finder says, well, I don't believe one of you for whatever reason, the fact finder may make facts. But it's often difficult to make factual findings without any sort of evidentiary hearing on it. And the question is to me, is there enough in the record here to justify an evidentiary hearing? And I'm inclined to say yes, but that's why I'm — In this particular case, Your Honor, we would just argue that there is no conflict between someone saying, I mailed the letter, and someone saying, I did not receive it. Both can be true. And, in fact, in this case, when you have a consistent number of letters being written saying, is anyone there? At some point, there are at least four letters that are sent to Trudell Griffin where there is no response at all. We can almost presume something is going wrong with the way it's being mailed or the way it's not getting delivered. We don't know what that is. Perhaps there could be a hearing on that. But it didn't answer the question, did it get to Trudell Griffin. Or the recordkeeping of the agency. Perhaps. I mean, it happens from time to time. That is true. But there's nothing in the record in this case to suggest that anything like that occurred. And, of course, the plaintiff may have requested an evidentiary hearing or something more. But really, the argument that was made in the district court only was, I mailed  That should be sufficient. Why under Bailey would there be an evidentiary record? Bailey is clear if there's an affidavit that says, no, that's it. I don't quite understand what an evidentiary hearing would give you. The two places at the CFR, it requires received. Those are the words. Bailey interprets received as a person having it. And on the same facts, Bailey found that the post office representative affidavit was correct, even though the defendant said he mailed it. Now, I don't know what an evidentiary hearing would tell you other than that. Exactly. In this case, and that is why I believe that one is not appropriate here. If, for example, you had a return receipt with a signature that looked like Trudell Griffin's signature, and she said, no, I didn't do that, that might be a case. The Eleventh Circuit has gone a little different direction. They've decided there should be a mailbox rule. Two other circuits, plus ours, that's three, have indicated there's no mailbox rule. Are you ready to state on behalf of the United States government that you're ready to adopt a mailbox rule? Certainly not on the instance like this one where there is any evidence submitted by the government acknowledging or stating non-receipt. No, Your Honor. I address only that aspect of Judge Nelson's question in which he says, is there ever a case where there may be an evidentiary hearing? And in the appropriate case, I don't go so far here as to say it will never happen. But clearly in this case where there is evidence submitted of non-receipt and it's unrebutted, there's no reason for an evidentiary hearing. I just wanted to take a moment to comment on a couple of other things that I heard. As far as the additional communications with the government and the district court's order to show cause, the record will reflect that that order to show cause was issued before the government was under any obligation to file a response of pleading. This is because the government has 60 days, not 30 as the typical defendant does. And so when I received this case after 30 days of being served, I also received an order to show cause from the government why we hadn't responded. Well, the time was not even there. The time had not expired for the government to respond. Not only that, but there was also no service given to the Attorney General. So even if the government only had 30 days, we were under no obligation to respond until Attorney General had been served. Also, he claims that there were no communications ever admitted by Trudell Griffin. Trudell Griffin does say that she received something in June of 2002, and she outlines in her declaration in paragraph 7, that's at tab 42, the communications that she did ultimately receive. It's not very specific as to when, but she does acknowledge receipt of certain communications. It's just not that there was a timely receipt of the SF-95 that plaintiff claims that he mailed. If there are any other questions. Roberts. I don't see any. Thank you, counsel. Thank you. Mr. Butler. Thank you for sharing this with me. I do recall this case, and I, as colloquially, it might be called a killer case for the government. If you could speak at the microphone, we could hear you better. Yes, sir. The Bailey case is, I do recall it well, now that you've had a chance to, well, not terribly well, but I do recall the case. And my recollection was, yes, it is the rule, I agree, of this circuit, and I recall sitting and reading the dissent and hoping that that would become the rule of this. Well, you know, we're bound by Bailey, so how do you distinguish Bailey? Why don't you give that to me, and then you can get back to the mic and answer. I distinguish it by the difference between two agencies. The distinguishing point to me is that when the claim was mailed, it was both deposited to and received by the United States Postal Service. It did not have to go to any other agency. The burden that the government is seeking to impose here is to show that the claim was received by a man or a woman, one Trudell Griffin. And that's not what is required by the regulations or the code. It's required to be received by the agency. And my position is simply that when it's the post office, the post office box is the post office. And that was months before. I think that the Trudell Griffin's declaration, notwithstanding, is incompetent in comparison with the declaration of mailing. It's an impossible burden. Is this an argument of mailbox rule? I think the real mailbox. Yes, I think it is. But I also think it's a matter of evidentiary competence. You didn't raise the mailbox rule in your brief. Oh, yes, sir, I did, both in the trial court and here. The mail common law mailbox rule? Yes, sir. Where did you raise that? In your issues. It's issue number two, common law mailbox rule. And it's also fairly close to the item. Whether the sworn testimony of a member of the bar and an officer of the court is worthy of some elevated consideration. I'm not. I'm reading the common law mailbox rule provides the proper and timely mailing and raises a rebuttable presumption it was received. Where are you? Page 11, Your Honor, the top of Plaintiff's opening brief. What page? Page 11. Oh, I'm talking about the issues, not the argument. I see. That's on page 1 and 2. As articulated, does it say mailbox? No, sir, it doesn't. And I tried to present the issues in a more argumentative fashion, I suppose. Okay. I would like to comment to Mr. Simon's saying that Trudell Griffin admits to receiving some correspondence in 2002. That would be after a lawsuit was filed and two years after I wrote to him or her. Thank you very much, Your Honor. Thank you. Thank both counsel for their arguments. The case just argued will be submitted for decision.
judges: Wallace, Hawkins, Thomas